The Honorable Mike Hathorn State Representative Route 2, Box 409 Huntsville, AR 72704-9649
Dear Representative Hathorn:
I am writing in response to your request for my opinion on the following question:
 When a school district incurs damages resulting from the fraudulent acts of its superintendent that go beyond the scope of legislative audit's capacity to certify specific, quantified damages, does the Arkansas Governmental Bonding Board have the authority and discretion to consider evidence of damages submitted by the school board in order to determine and reimburse the school district for the total amount of a loss incurred as a result of the fraudulent act which triggered coverage under the Blanket Dishonesty Bond? More specifically, is the Governmental Bonding Board limited to only considering the damages incurred by the "bid discrepancy" or may it also consider the total damages incurred by the superintendent's fraudulent act of accepting an inflated bid price from a computer company which he and the school's technology director owned?
Your request is a follow-up of one addressed in Ark. Op. Att'y Gen.2000-042, in which I opined that the superintendent's admitted sale of his own company's computers to the school district without disclosing his ownership interest was "an act which is punishable under the criminal code" and, as such, fulfilled one condition precedent to the insurer's liability under a blanket dishonesty bond. You now ask whether the school district may present the Governmental Bonding Board with a model of damages different from the one adopted by the Legislative Joint Auditing Committee. Specifically, you report that the Legislative Joint Auditing Committee "has certified a report of the damages incurred based on the discrepancy between the bid specifications and what was actually received by the school," whereas the school board additionally wishes to establish through expert testimony "not only the discrepancy in bid specifications, but also . . . what a fair price for such `in-compliance with bid specifications' computers would have been at that time if a legitimate and legal bidding process had been used."
RESPONSE
In my opinion, absent a contrary provision in the bond, which ultimately controls the parties' respective contractual rights, the school board should probably be permitted to put on proof of damages to supplement the evidence contained in the Legislative Auditor's proof of loss.
Subsection 21-2-704(b) provides that the Arkansas Fidelity Bond Program, set forth in A.C.A. §§ 21-2-701 through -711 (Repl. 1996 Supp. 1999), will cover "actual losses" suffered by participating governmental entities through any fraudulent or dishonest act or acts committed by any of the officials or employees, acting alone or in collusion with others." Subsection 21-2-708 of the Code provides:
 It shall be the duty and responsibility of the Legislative Auditor, with the approval of the Legislative Joint Auditing Committee, to give notice and make proof of loss to the [Governmental Bonding Board] on fidelity bonds on behalf of any public official, officer, or employee when the audit report of the records of any such official, officer, or employee reflects apparent unauthorized disbursements or unaccounted-for funds or property for which the public official, officer, or employee may be liable.
Subsection 21-2-709(a) of the Code provides:
 Upon the receipt of the proof of loss from the Legislative Auditor, the board shall determine whether the loss is covered under the Fidelity Bond Program. If the board determines that the loss is covered under the Fidelity Bond Program, the Insurance Commissioner shall authorize fidelity bond loss payments from the fund to the participating governmental entity on a timely basis. All vouchers for bond claim payments shall include as supporting documents a copy of the payment recommendation by the State Risk Manager and a copy of the proof of loss from the Legislative Auditor. Any loss payment may be adjusted by any applicable deductibles, restitution, or coinsurance payments.
At issue is whether these statutes render the Legislative Auditor's proof of loss the only evidence of damages cognizable by the Governmental Bonding Board in determining the extent of liability, if any, under the fidelity bond. In my opinion, this question should in all likelihood be answered in the negative.
In the attached Ark. Op. Att'y Gen. 92-087, my immediate predecessor discussed the role of the Governmental Bonding Board in reviewing claims against the Fidelity Bond Program:
 [W]ith respect to losses sustained under the bond program, the Legislative Auditor, with the approval of the Legislative Joint Auditing Committee, has the statutory responsibility to give notice and make proof of loss to the Governmental Bonding Board. A.C.A. 21-2-708(a). Once a loss is referred to the board, it is the board's responsibility to "determine whether the loss is covered under the Fidelity Bond Program." A.C.A. 21-2-709(a). The Legislative Auditor also has the responsibility to request the prosecuting attorney to assist in obtaining restitution for losses. A.C.A. 21-2-708(c).
 There are several factors to be considered by the Governmental Bonding Board in determining loss coverage. One issue is whether an "actual loss" was sustained under the terms of A.C.A. 21-2-704(b). This term is not defined in the act. Reference would therefore likely be made to the particular bond provisions.
 Another issue which would likely be taken into consideration would be whether the employee's act was one of fraud or dishonesty under the terms of the act. Again, these terms are not defined in the act, and the particular bond provisions would have to be referenced by the board for definitional guidance.
As this summation reflects, in an action on a fidelity bond, the Governmental Bonding Board, although an executive agency, acts in a classic judicial capacity, weighing the facts as presented through testimony to determine whether the claimant sustained an "actual loss" as the result of "fraud or dishonesty" covered under the "particular bond provisions." Significantly, the statutory language quoted above only provides that the documentation in support of a claim "shall include
. . . a copy of the proof of loss" (emphasis added). On its face, this statutory language suggests that the Legislative Auditor's proof of loss need not comprise the only evidence on the issue of damages. Moreover, as a general proposition, a "proof of loss" is interpreted as constituting a mere estimate to be tested in light of the evidence as a whole. SeeEmployer's Liability v. Mid-State Homes, 250 Ark. 789, 800,467 S.W.2d 386 (1971) ("the statements contained in a proof of loss as to the amount and circumstances of the loss do not, as a matter of law, preclude the insured from proving and recovering the actual amount of his loss"). In my opinion, then, the statute would not preclude a school district from presenting evidence of damages to the finder of fact in support of its contractual claim on the bond.
The ability of a claimant to participate in the administrative proceeding to establish the fact and extent of an "actual loss" by a covered governmental entity is illustrated in Volunteer Council, Arkansas HumanDevelopment Center, Inc. ["AHDC"] v. Governmental Bonding Board,319 Ark. 716, 894 S.W.2d 580 (1995). In Volunteer Council, the AHDC brought a claim before the Governmental Bonding Board contending that its was entitled to reimbursement under the Fidelity Bond Program because its former superintendent had pleaded guilty to theft of a specified sum of AHDC money. Id. at 717. At the hearing, the AHDC successfully claimed that the actual loss exceeded the amount the superintendent had admitted to stealing. Id. at 718. However, the Governmental Bonding Board further concluded that the AHDC was not a governmental entity qualified to participate in the Fidelity Bond Program. Id. The trial court and the Supreme Court affirmed this conclusion by reviewing the entire administrative record for abuse of discretion, as dictated by the Administrative Procedure Act, A.C.A. § 25-15-212. Id. at 718-19.
Significantly, the Court in Volunteer Council at no point suggested that the AHDC was statutorily restricted from claiming damages in whatever amount it felt was warranted before the Governmental Bonding Board. This conclusion is clearly appropriate, particularly in light of the fact that review at the trial court level is limited to the administrative record, which in the present case would not even include the school district's proposed measure of damages unless the district were permitted to put on evidence at the administrative agency level.[1] Accordingly, I believe the school district should be permitted to introduce its proposed expert testimony on the issue of damages.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosure
[1] For a persuasive argument that the standard of review under the Administrative Procedure Act may in certain instances be inadequate in light of constitutional imperatives, see Antley, Judicial Review ofNon-Court Decisions: A Constitutionally Based Examination of Arkansas'Review System, 49 Ark. L. Rev. 425 (1996). Antley generally maintains that when an administrative agency is functioning in a quasi-judicial, as opposed to a quasi-legislative or executive, capacity, the separation of powers doctrine suggests that the judiciary afford a disaffected claimant a trial de novo. As Antley points out, 49 Ark. L. Rev. at 437-38, this conclusion has been sporadically supported by Supreme Court pronouncement, as in the following:
 The issue of the constitutional propriety of de novo review by the judiciary of administrative action primarily turns upon the character and legal status of the interests which are affected by administrative action. If the interests affected by administrative actions are constitutionally or statutorily preserved or preserved by private agreement, so that their enforcement is a matter of right, de novo
review by the judiciary of administrative decisions altering these interests is appropriate.
Goodall v. Williams, 271 Ark. 354, 356 609 S.W.2d 25 (1980). In setting a uniform standard for review of all administrative decisions, the Administrative Procedure Act fails to accommodate this crucial distinction between types of administrative action.